IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES MARTEL FRAZIER, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. RDB-21-2235<br>Criminal Action No. RDB-19-0209 |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Petitioner James Martel Frazier ("Frazier" or "Petitioner") was arrested in April 2019 for his involvement in a multi-defendant drug conspiracy responsible for trafficking large amounts of narcotics in Maryland and Delaware. (Plea Ag't 11, ECF No. 69.) On November 12, 2019, Frazier pled guilty to (1) conspiracy to distribute and possess with intent to distribute heroin (100 grams or more), fentanyl (40 grams or more), cocaine (500 grams or more), and crack cocaine (28 grams or more); (2) possession with intent to distribute heroin (100 grams or more), cocaine (500 grams or more), and crack cocaine (28 grams or more); and (3) possession of a firearm in furtherance of a drug trafficking crime. (*Id.* at 2–3.) On February 10, 2020, he was sentenced to 135 months' imprisonment. (J. 1-2, ECF No. 87.)

On July 12, 2021, Frazier filed a Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255. In support of this motion, Frazier claims he received ineffective assistance of counsel from his former attorney, Mr. Christopher Nieto, throughout his defense. (Mot. Vacate 4,

1

ECF 134.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, Petitioner's motion is **DENIED**.

## BACKGROUND

Throughout 2018, law enforcement with the Dorchester County Narcotics Task Force (DCNTF) and Homeland Security Investigations (HSI) conducted an investigation into the trafficking of significant amounts of narcotics. (Plea Ag't 11.) During the investigation, law enforcement officials employed a range of investigative techniques, "including physical and electronic surveillance, search warrants, and court-authorized wiretaps." (*Id.*) The investigation revealed that Frazier had significant involvement in the organization. (*Id.*) Accordingly, investigators obtained judicial authorization to conduct wiretaps of his communications. (*Id.*) "Intercepted communications, as well as physical and electronic surveillance of [Frazier] and his co-conspirators, showed that [he] personally distributed significant quantities of drugs and that he worked with others, including his co-defendants, to distribute drugs on the conspiracy's behalf." (*Id.*)

On February 23, 2019, investigators executed a series of search warrants at locations including an apartment in Federalsburg, Maryland, and two residences in Seaford, Delaware, in an attempt to recover drugs and drug-trafficking proceeds. (*Id.*) The searches collectively resulted in the seizure of over 250 grams of controlled substances containing a mixture of fentanyl and heroin; over 250 grams of cocaine base ("crack" cocaine); over 400 grams of methamphetamine; and over a kilogram of cocaine. (*Id.*) Additionally, four firearms were recovered from the Delaware residences. (*Id.*) Frazier was indicted and arrested in April 2019. (Initial Appearance, ECF 10.)

On November 12, 2019, Frazier pled guilty to all charges in the indictment, including (1) conspiracy to distribute and possess with intent to distribute heroin (100 grams or more), fentanyl (40 grams or more), cocaine (500 grams or more), and crack cocaine (28 grams or more); (2) possession with intent to distribute heroin (100 grams or more), cocaine (500 grams or more), and crack cocaine (28 grams or more); and (3) possession of a firearm in furtherance of a drug trafficking crime. (ECF No. 69 at 1.) In his Plea Agreement, Frazier admitted that he was a "significant trafficker of the aforementioned drugs," that he "personally distributed significant quantities of drugs," and that he "worked with others . . . to distribute drugs on the conspiracy's behalf." Frazier further admitted that he possessed two of the firearms discovered in the searches in furtherance of the conspiracy's drug trafficking activities. (*Id.* at 11.)

The advisory United States Sentencing Guidelines recommended a sentence of 12.5 to 15.5 years' imprisonment on the conspiracy and possession charges, with an additional 5 years' imprisonment for the violation of 18 U.S.C. § 924(c), to be served consecutively. (*Id.* at 3) In Frazier's Plea Agreement, the Government agreed to a sentence of 135 months, or 11.25 years, just below the advisory Guidelines range. (*Id.* at 6–7.) Frazier accepted the plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 11(c)(1)(C). This Court imposed the agreed-upon sentence on February 10, 2020. (J. 1-2, ECF No. 87.)

On February 10, 2021, Petitioner filed a Motion For Enlargement of Time to File Writ of Habeas Corpus, on the basis that his newly-retained attorney, Mr. Harry Rifkin, required addition time to review his case. (ECF No. 124.) This Court approved the requested 30-day extension by marginal order that same day. (ECF No. 125.) On July 12, 2021, four months

after the extended deadline passed, Petitioner filed the instant Motion to Vacate pursuant to 28 U.S.C. § 2255 (ECF No. 134), asserting that he had received ineffective assistance from his former counsel, Mr. Christopher Nieto, throughout his defense.

Petitioner's motion is now ripe for review.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a prisoner in custody may move to vacate, set aside, or correct his sentence on four grounds: (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose the sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) "the sentence 'is otherwise subjected to collateral attack.'" *Hill v. United States*, 368 U.S. 424, 426–27 (1962) (quoting 28 U.S.C. § 2255). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428). The scope of a § 2255 collateral attack is far narrower than an appeal, and "a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). Thus, procedural default will bar consideration under § 2255 of any matters that "could have been but were not pursued on direct appeal, [unless] the movant show[s] cause and actual prejudice resulting from the errors of which he complains." *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 2010).

**ANALYSIS**

Petitioner brings the instant § 2255 motion on the basis of Constitutionally deficient ineffective assistance of counsel. Frazier's motion is untimely, and he presents no argument for an equitable tolling of the deadline. Even if this motion were timely filed, the Petitioner's claim of ineffective assistance is meritless. Petitioner presents neither evidence nor substantive argument that sufficiently demonstrates objectively poor performance by his attorney. Further, Petitioner fails to demonstrate any prejudice that he allegedly experienced as a result of counsel's allegedly deficient performance. In light of these findings, Petitioner's motion to vacate under § 2255 must be denied.

**I.   Petitioner's Motion is Untimely**

As an initial matter, Frazier's Motion to Vacate was filed on July 12, 2021, well after the one-year limitations period imposed by law and the 30-day extension granted by this Court. (ECF No. 134.) Motions to Vacate, Set Aside or Correct under 28 U.S.C. § 2255(f) must generally be filed within one year of "the date the judgment of conviction becomes final." 28 U.S.C. §§ 2255(f)(1); *see also* 28 U.S.C. 2244(d); *Rouse v. Lee,* 339 F.3d 238, 253 (4th Cir. 2003) ("[S]ection 2244(d) . . . provides a 1-year limitation period and explicitly specifies conditions under which that period should be tolled."). "A criminal conviction becomes final at the end of the appellate process—i.e., when the time for a direct appeal expires and the defendant has not noticed an appeal." *United States v. Oliver*, 878 F.3d 120, 125 (4th Cir. 2017). Judgment was entered against Frazier on February 10, 2020, and he did not timely appeal.[1] (ECF No. 87.)

---

[1] Frazier filed an untimely Notice of Appeal on August 10, 2020, well after judgment became final in this case. (ECF No. 107.) This Court granted a motion to voluntarily dismiss the appeal on January 6, 2021. (ECF No. 116.)

Accordingly, Frazier's judgment of conviction became final two weeks later, on February 24, 2020, Fed. R. App. P. 4(b)(1)(A), placing his deadline to file a 28 U.S.C. § 2255 motion on February 24, 2021.

On February 10, 2021, Frazier requested, and this Court granted, a 30-day extension to file his writ of habeas corpus on the basis that his newly-retained attorney required additional time to review the merits of his case. (Mot. Enlargement Time, ECF No. 124; Ord., ECF No. 125.) Petitioner's motion attested that his attorney "estimates that he will be able to complete this process in 30 days," and requested an extension until March 12, 2021 on this basis. (Mot Enlargement Time 3.) Despite this, Petitioner's Motion to Vacate was not filed until July 12, 2021, precisely four months after this extended deadline. Petitioner did not request any further extensions, and neither the Frazier nor his attorney have provided any excuse for this delay. Accordingly, Petitioner's motion is untimely.

Since the motion is untimely filed, Petitioner must show that the principles of equitable tolling apply to avoid dismissal. The Supreme Court established in *Holland v. Florida*, 560 U.S. 631 (2010), that "a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." 560 U.S. at 649 (quoting *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005)). In the Fourth Circuit, "extraordinary circumstances" are limited to "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc). Accordingly, "an otherwise time-barred petitioner must present '(1) extraordinary circumstances, (2) beyond his control

or external to his own conduct, (3) that prevented him from filing on time.'" *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (citing *Rouse*, 339 F.3d at 246).

Generally, "attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." *Rouse,* 339 F.3d at 248; *accord Harris v. Hutchinson*, 209 F.3d 325, 331 (4th Cir. 2000) ("[A] mistake by a party's counsel in interpreting a statute of limitations does not present [an] extraordinary circumstance beyond the party's control."). In *Rouse v. Lee*, 339 F.3d 238 (4th Cir. 2003), a North Carolina jury convicted the defendant of first-degree murder, for which he was sentenced to death following a capital sentencing proceeding. 339 F.3d at 241.[2] Rouse filed a habeas petition in the United States District Court for the Middle District of North Carolina, which dismissed the petition as untimely. *Id.* On appeal, petitioner argued that equitable tolling applied, arguing that the "'gross negligence and unprofessional conduct' of his former habeas corpus counsel . . . constitute[d] an extraordinary circumstance beyond his control that prevented him from filing on time." *Id.* at 248. The Fourth Circuit rejected this argument, holding that counsel's errors were not "external" to the defendant, "not because he participated in, ratified, or condoned their decisions, but because they were his agents, and their actions were attributable to him under standard principles of agency." *Id.* at 249 (citing *Coleman v. Thompson*, 501 U.S. 722, 753–54 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92 (1990)).[3]

---

[2] The defendant in *Rouse* was also convicted of armed robbery and attempted rape. *Id.* at 241.
[3] The defendant further argued that the nature of his sentence and the strength of his underlying claim from the original case should impact the equitable tolling analysis. *Id.* at 250. However, the Fourth Circuit emphasized that the merits of the claim have no bearing on the equitable tolling analysis: "Allowing consideration of the merits of time-barred claims to creep into the equitable tolling analysis

7

Petitioner makes no mention at all of equitable tolling in the Instant Motion. (ECF No. 134.) In his Reply to the Government, Petitioner references equitable tolling, but provides no substantive argument as to what the "extraordinary circumstances" were that prevented him from filing on time. (ECF No. 140 at 3-4.) Rather, Petitioner simply recapitulates his argument for ineffective assistance of counsel, arguing that he "did not know" or "was unaware" of the putative incompetence of Mr. Nieto. (*Id.*) As in *Rouse*, the substance of Petitioner's underlying claim has no bearing here. *Cf.* 399 F.3d at 250.

Moreover, even if Petitioner discovered his claims six months after his sentencing, he could have submitted his motion on time. In his sworn affidavit, Petitioner contends that he was not aware of the incompetence until he "was incarcerated and had an opportunity to do legal research… he did not discover these claims for at least six months after he was in prison." (Pet'rs' Aff. at ¶ 9, ECF No. 134-1.) The record further reflects that the Petitioner was aware of his claim before the one-year deadline, as he retained Mr. Rifkin to file the instant motion, and requested a thirty-day extension. (ECF No. 124 at 1-2.) Petitioner should have informed Mr. Rifkin immediately as to his concerns about ineffective assistance; there is clear evidence Petitioner failed to do so, as the initial motion for extension to file a habeas corpus petition makes no mention of ineffective counsel, referencing only the issue of search warrants. (ECF No. 124 at ¶3.) This evidence suggests that Petitioner did not "pursu[e] his rights diligently." *Holland*, 560 U.S. at 649. As such, the evidence is substantial enough for the Court to rule out equitable tolling in this case.

---

lets petitioners effectively circumvent the statute of limitations because the merits of their claims will always be considered." *Id.* at 251.

## II.   Petitioner has Failed to Establish Ineffective Assistance of Counsel

Even if the Court were to accept Petitioner's untimely motion, he has still failed to present a cognizable argument for ineffective assistance of counsel. A freestanding ineffective assistance of counsel claim may be properly asserted for the first time in a § 2255 motion. *United States v. DeFusco*, 949 F.2d 114, 120–21 (4th Cir. 1991). To set forth a Sixth Amendment claim for ineffective assistance of counsel, Petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires the petitioner to show: (1) "that counsel's performance was deficient;" and (2) "that the deficient performance prejudiced the defense." 466 U.S. at 687; *accord United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015) ("[J]udicial scrutiny of counsel's performance must be highly deferential." (quoting *Strickland*, 466 U.S. at 689)). When applying *Strickland*, it is unnecessary to address both prongs if the petitioner makes "an insufficient showing on one." *Moore v. Hardee*, 723 F.3d 488, 500 (4th Cir. 2013) (quoting *Strickland*, 466 U.S. at 697). Accordingly, ineffective assistance of counsel claims may be denied solely on a deficiency in either the "prejudice" prong or the "performance" prong. *See Strickland*, 466 U.S. at 697.

Frazier's Motion to Vacate asserts in conclusory fashion that Mr. Nieto made "grave and serious" failures to assert "meritorious defenses to several of the charges," which "would have resulted in a much more favorable plea agreement and a significantly lighter sentence." (ECF No. 134 at 4.) However, he offers no evidence or authority in support of this assertion. Petitioner fails to specify what defenses his attorney failed to raise, how those defenses might have affected the charges against him, or how those defenses may have influenced his decision

to plead guilty or his resulting sentence. As such, Frazier satisfies neither the performance nor the prejudice prong of *Strickland*.

### A. Deficient Performance

Frazier alleges that his attorney committed several errors that affected the outcome of his criminal case. The "performance" prong requires a showing that counsel's representation fell below an "objective standard of reasonableness." *Id.* at 688. In making this determination, this Court applies "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 688–89; *see Yarbrough v. Johnson*, 520 F.3d 329, 337 (4th Cir. 2008) (highlighting importance of avoiding "the distorting effects of hindsight" (quoting *Strickland*, 466 U.S. at 689)). Counsel's performance must be "evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of reasonableness is highly deferential." *United States v. Roane*, 378 F.3d 382, 404–05 (4th Cir. 2004) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)). To prevail, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed to the defendant in the Sixth Amendment." *Id.* at 687–91.

In an affidavit submitted in support of his motion, Frazier alleges a flurry of deficiencies in his defense attorney's performance. These arguments may be distilled into three claims: (1) that Mr. Nieto failed to attend a hearing on a motion to suppress evidence brought by co-defendant Mr. Eley; (2) that he failed to challenge several evidentiary decisions; (3) that Mr. Nieto did not research and inform him of an affidavit filed in Delaware by Doneisha Holland, the mother of Mr. Frazier's child. (ECF No. 134-1.) However, Frazier offers no evidence in support of these statements beyond the conclusory allegations in his affidavit, and he cites no

authority demonstrating how these incidents render Mr. Nieto's assistance constitutionally deficient. (ECF No. 134.)

As to the first claim, Frazier fails to explain how physical attendance at Mr. Eley's suppression hearing could have affected Mr. Nieto's defensive strategy. Petitioner mentions in passing that Mr. Nieto could have filed a motion to suppress after surveillance presented at Mr. Eley's hearing did not observe Frazier physically pass a bag of drugs to Mr. Eley, but Petitioner provides no explanation as to why Mr. Nieto's choice not to file a motion constitutes performance deficiency. (Pet'rs' Mot. at 3, ECF No. 140.) Frazier was already under investigation as the suspected leader of a drug trafficking organization; officers witnessed Mr. Eley meet with Mr. Frazier, enter his vehicle, and emerge with a package that was subsequently determined to be a fentanyl/ heroin mixture upon its confiscation. (ECF No. 54 at 2-3.) Additionally, all motions to suppress addressed during Mr. Eley's suppression hearing were denied. (ECF No. 59; ECF No. 60.) As such, Mr. Nieto's absence at Mr. Eley's hearing does not place his performance below an "objective standard of reasonableness." *Strickland* at 688.

The second claim encompasses several alleged "failures," by Mr. Nieto, none of which fall outside the "wide range of reasonable professional assistance" available to attorneys. *Id.* First, Frazier argues that Mr. Nieto "failed to challenge" Petitioner's possession of guns and drugs found during the execution of the search warrants. (ECF No. 134, ¶ 2.) Second, Frazier asserts that Mr. Nieto could have moved to suppress drug evidence as other individuals besides Frazier had keys to one of the residences that was searched. (*Id.*) Third, Frazier claims without evidence that the conspiracy charge was wholly baseless, and that Mr. Nieto failed to challenge the possession of drugs found in an Acura that Frazier "did not own or drive." (*Id.* at ¶ 3, 7.)

11

In making these arguments, Frazier offers virtually no insight as to how Mr. Nieto could have reasonably challenged the weapons or drug possession, making only a vague claim in his Reply that a lack of fingerprints on some of the guns constituted grounds for a suppression hearing. (ECF No. 140 at 3.) In sum, Frazier suggests that Mr. Nieto should have attempted to suppress several pieces of evidence that Frazier admitted to in his signed plea agreement, based on highly tenuous potential issues. (ECF No. 69 at 11.) These conclusory arguments fail to rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. 688 at 689. Mr. Nieto's failure to pursue suppression of these evidentiary points on the grounds presented does not place him below objective standards of reasonableness. *Id* at 688-89.

Third, and finally, Petitioner contends that Mr. Nieto failed to inform him of the Affidavit of Doneisha Holland, which claimed that drugs found in her house were hers, and not Frazier's. (ECF No. 134-1, ¶ 6.) Once again, Petitioner fails to specify as to how this "failing" placed Mr. Nieto below an objective standard of competence. In fact, Petitioner even notes that most of the drugs he was charged with possessing were found elsewhere and makes no argument as to the significance of the affidavit or how it might have affected his defense, offering only a conclusory assertion that it would have been "helpful." (ECF No. 134 at 3.) Therefore, Mr. Nieto's lack of reference to Ms. Holland does not reflect on his performance, and certainly does not place it below an objective standard of reasonableness. *Strickland*, 466 U.S. 689.

B. <u>Prejudice</u>

Even if counsel's performance were constitutionally deficient, Frazier fails to show prejudice. The "prejudice" prong requires the petitioner to demonstrate that counsel's alleged errors deprived him of a fair trial. *Strickland*, 466 U.S. at 687. "To satisfy the second prong, a petitioner must show that 'there is a reasonable probability that, but for counsel's [alleged] errors, the result of the proceeding would have been different.'" *Mahdi v. Stirling*, 20 F.4th 846, 894 (4th Cir. 2021) (quoting *Strickland*, 466 U.S. at 694). Additionally, a petitioner faces a greater burden when he alleges ineffective assistance of counsel after a guilty plea has been entered. *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). In such a case, petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *Fields v. Att'y Gen.*, 956 F.2d 1290, 1299 (4th Cir. 1992).

In *Fields v. Attorney General*, 956 F.2d 1290 (4th Cir. 1992), a defendant who was convicted of daytime housebreaking following a guilty plea filed a habeas petition, alleging that his defense counsel had a conflict of interest that culminated in his advice to plead guilty. 956 F.2d at 1291, 1298. The District of Maryland denied the petition, and the Fourth Circuit affirmed, concluding that the petitioner had failed to show prejudice, as his plea agreement was voluntarily and intelligently made. *Id* at 1229.[4] The court observed that Fields was twice asked whether anyone had forced, coerced, or threatened him into pleading guilty, and that he

---

[4] The *Fields* Court also held that the petitioner had not satisfied the "performance" prong, as Firlds had commented under oath: "I am very pleased with my counsel." *Id.* at 1229. "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Id.*

twice answered in the negative. *Id.* at 1299. The voluntary character of the defendant's plea bargain was further evidenced by the fact that the plea agreement was favorable to him: "His punitive exposure, had he been convicted at trial, would have been twenty years' imprisonment on each count; instead, he was sentenced, effectively, to a total of five years." *Id.* at 1299. Moreover, Fields conceded that, even with competent counsel, he would not have proceeded to trial. *Id.* at 1297.

The same is true in this case. Frazier rarely references prejudice in his filings at all; Petitioner nowhere demonstrates, or even *alleges*, that he would have gone to trial absent Mr. Nieto's putative incompetence. Frazier accepted the plea agreement and the agreed upon sentence pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 11(c)(1)(C). His signed Plea Agreement certifies: "I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it." (ECF No. 69 at 10.) Moreover, during his plea colloquy, Frazier affirmed that he understood the plea agreement, that his agreement was voluntary, and that he was satisfied with his counsel's performance. (Sentencing Hr'g at 4-5, ECF No. 115 *SEALED*.) Here, as in *Fields*, these considerations strongly suggest that Frazier's plea agreement was voluntary.

Rather than contend that he would have proceeded to trial absent the putative deficiencies, Frazier insufficiently alleges that Mr. Nieto's incompetence resulted in a less favorable agreement than he might have otherwise entered. (ECF No. 140 at 2, 4.) This theory is speculative and unsupported by the record. Only once does the Petitioner mention prejudice connected to a specific evidentiary matter, claiming that he would not have accepted a plea

deal if he had been aware that others possessed keys to a searched house. (ECF No. 140 at 4.) However, Frazier's filings do not explain how or why this would have affected his willingness to sign the plea agreement. Even assuming *arguendo* that Mr. Nieto rendered deficient performance, Frazier can hardly claim that he was prejudiced by a sentence that fell well below the advisory Guidelines given the strength of the evidence against him. Frazier faced a minimum of 15 years and a maximum of life in prison if convicted—a plea deal that secured an 11 year sentence can hardly be considered prejudicial to Frazier's defense. As the filings include neither argument nor evidence that Frazier would have gone to trial, Petitioner fails to establish prejudice under Fourth Circuit precedent. *Fields* at 1297.

As Frazier agreed when he signed his guilty plea, "if this case had proceeded to trial, [the Government] would have proven [the charges] beyond a reasonable doubt." (ECF No. 69 at 11.) Acknowledging the voluntariness of Frazier's sworn statements, and the lack of any evidence refuting those statements in either the instant motion or his reply to the government, Petitioner has failed to establish prejudice resulting from the facts discussed in his motion. Accordingly, Petitioner's Motion to Vacate Sentence (ECF No. 134) is **DENIED.**

## CONCLUSION

For the reasons stated above, Petitioner's Motion to Vacate Sentence under 28 U.S.C. § 2255 (ECF No. 134) is **DENIED.** Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v.*

*Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); see also *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). Because reasonable jurists would not find Frazier's claims debatable, a certificate of appealability is **DENIED** as to Petitioner's Motion to Vacate Sentence under 28 U.S.C. § 2255.

    A Separate Order Follows.


Dated:       August 1, 2022

                                                            /s/
                                                            Richard D. Bennett
                                                            United States District Judge